**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINGO PINA,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN, F.C.I. MENDOTA,<br><br>    Respondent. | Case No. 1:23-cv-01646-EPG-HC<br><br>ORDER GRANTING IN PART RESPONDENT'S MOTION TO DISMISS, DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECTING CLERK OF COURT TO CLOSE CASE<br><br>(ECF No. 8) |

Petitioner Domingo Pina is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 5, 9, 10.) For the reasons stated herein, the Court grants Respondent's motion to dismiss and dismisses the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

Petitioner pleaded guilty to possession with intent to deliver a controlled substance in the United States District Court for the Southern District of Texas, and on June 3, 2019, Petitioner was sentenced to an imprisonment term of ninety months. (ECF No. 1 at 1; ECF No. 8 at 2; ECF No. 8-1 at 8–9.[1])

In the instant petition for writ of habeas corpus, Petitioner challenges a Federal Bureau of Prisons' policy of refusing to allow prisoners with immigration detainers to apply First Step Act

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1  ("FSA") time credits ("FTCs" or "ETCs"). (ECF No. 1.) On May 14, 2024, Respondent filed a
2  motion to dismiss the petition, arguing, *inter alia*, that "Petitioner is . . . jurisdictionally and
3  statutorily barred from FSA ETC sentence-offsets due to the final order of removal from another
4  federal court." (ECF No. 8 at 3.) On June 10, 2024, Petitioner filed an opposition. (ECF No. 11.)

      As Respondent had not provided the Court with a copy of the purported final order of removal itself, the Court ordered Respondent to file a copy of the order. (ECF No. 12.) On August 6, 2024, Respondent filed under seal various immigration documents. (ECF No. 17.) On August 15, 2024, the Court served the sealed documents to Petitioner and ordered that any response regarding the sealed documents be filed within fourteen days. (ECF No. 20.) To date, no response has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. First Step Act

"On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, was enacted. The Act implemented a number of prison and sentencing reforms." Bottinelli v. Salazar, 929 F.3d 1196, 1197 (9th Cir. 2019). Under the First Step Act, a "prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits[.]" 18 U.S.C. § 3632(d)(4)(A). "Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). However, a "prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))." 18 U.S.C. § 3632(d)(4)(E)(i).

### B. District Court Authority

Respondent contends that "Petitioner has no statutory authority under § 2241 to compel BOP's FSA ETC discretionary (sentence end-phase programming) action via declaratory and

advisory opinions," arguing that "Petitioner has failed to state a § 2241 claim" because "FSA ETC discretionary actions, which involve, among other things, agency inmate evaluations and assessment of available resources, are entrusted by law — such as inmate specific, individualized, FSA ETC earning via EBRR and PA programming — to BOP discretionary action." (ECF No. 8 at 3.)

Pursuant to 18 U.S.C.§ 3632(d)(4)(C), "[t]ime credits earned . . . by prisoners who participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release" and the Director of the BOP "*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). "The BOP is therefore required to apply time credits to eligible prisoners who have earned them and cannot categorically make prisoners ineligible for such credits in a manner that contravenes the statutory scheme set forth in 18 U.S.C. § 3632." Sierra v. Jacquez, No. 2:22-cv-01509-RSL-BAT, 2022 WL 18046701, at *4 (W.D. Wash. Dec. 27, 2022), report and recommendation adopted, 2023 WL 184225 (W.D. Wash. Jan. 13, 2023). Given that application of FTCs to eligible prisoners who have earned them is *required*, not discretionary, under U.S.C.§ 3632(d)(4)(C), the Court finds that dismissal is not warranted on the ground that it lacks jurisdiction to compel BOP discretionary action with respect to FTCs. See Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016) ("Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or *exceeded its statutory authority* when it acted pursuant to 18 U.S.C. § 3621." (emphasis added) (citing Close v. Thomas, 653 F.3d 970, 973–74 (9th Cir. 2011))).

**C. Exhaustion**

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived. Id. (citations omitted). "Exhaustion is not required if: (1) administrative remedies would be futile; (2) the actions of the agency clearly and unambiguously

1  violate statutory or constitutional rights; or (3) the administrative procedure is clearly shown to
2  be inadequate to prevent irreparable injury." Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir.
3  1991).

4      The BOP grievance process is set forth at 28 C.F.R. § 542.10 *et seq*. "As a first step in
5  this process, an inmate normally must present his complaint informally to prison staff using a
6  BP–8 form." Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010). "If the informal complaint
7  does not resolve the dispute, the inmate may make an 'Administrative Remedy Request'
8  concerning the dispute to the prison Warden using a BP–9 form." Nunez, 591 F.3d 1219. "If the
9  Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional
10 Director using a BP–10 form." Nunez, 591 F.3d 1219. "The inmate may appeal an adverse
11 decision by the Regional Director to the Central Office (also called the General Counsel) of the
12 BOP using a BP–11 form." Nunez, 591 F.3d 1219. A final decision from the Office of General
13 Counsel completes the BOP's administrative remedy process. 28 C.F.R. § 542.15(a).

14     Here, it is undisputed that Petitioner failed to exhaust administrative remedies. Petitioner
15 contends that exhaustion is futile. (ECF No. 1 at 2, 7, 14–16; ECF No. 8-1 at 4.) The Court will
16 waive the exhaustion requirement in the instant matter. Given Respondent's determination that
17 Petitioner is "jurisdictionally and statutorily barred from FSA ETC sentence-offsets due to the
18 final order of removal," (ECF No. 8 at 3), the Court finds that pursuing administrative remedies
19 would be futile and thus, dismissal is not warranted for nonexhaustion.

20     **D.  Final Order of Removal**

21     A prisoner is ineligible to apply FTCs "if the prisoner is the subject of a final order of
22 removal under any provision of the immigration laws (as such term is defined in section
23 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))." 18 U.S.C.
24 § 3632(d)(4)(E)(i). Here, Respondent contends that Petitioner is ineligible to apply FTCs because
25 he is subject to a final order of removal. (ECF No. 8 at 3.) Although Respondent has not
26 provided a copy of the actual final order of removal itself, Respondent has submitted copies of
27 multiple warrants of removal referencing a final order of removal by an immigration judge in
28 addition to an April 21, 2017 decision by the U.S. Department of Homeland Security ("DHS") to

reinstate a February 9, 1999 order of removal. (ECF No. 17.) Petitioner does not contest the existence of the February 9, 1999 order of removal or that a final order of removal precludes the application of FTCs application towards prerelease custody or supervised release. In fact, in a September 2, 2014 DHS interview Petitioner acknowledged he had been previously ordered deported, excluded, or removed from the United States. (ECF No. 17 at 9.)

"[I]n the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" Nasrallah v. Barr, 140 S. Ct. 1683, 1690 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). Here, a prior order of removal was entered on February 9, 1999, Petitioner previously was removed on September 4, 2014 pursuant to an order of removal, and on April 21, 2017, DHS determined Petitioner is subject to removal through reinstatement of the prior order. (ECF No. 17 at 9.) Accordingly, the Court finds that Petitioner "is the subject of a final order of removal" for purposes of 18 U.S.C. § 3632(d)(4)(E)(i), and thus, is ineligible to apply FTCs toward time in prerelease custody or supervised release. Therefore, Respondent's motion to dismiss should be granted and the petition should be dismissed.

Accordingly, the Court HEREBY ORDERS:

1. Respondent's motion to dismiss (ECF No. 8) is GRANTED in part;
2. The petition for writ of habeas corpus is DISMISSED; and
3. The Clerk of Court is DIRECTED to CLOSE the case.

IT IS SO ORDERED.

Dated:   **September 27, 2024**           /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE

5